IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| B.B., A MINOR CHILD, B/N/F<br>CARLOS BEARD AND TAMMYE BEARD,<br><br>Plaintiffs,<br><br>VS.<br><br>CATAHOULA PARISH<br>SCHOOL DISTRICT,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:11-CV-1451 |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff, B.B., a student with a disability, through next friends CARLOS BEARD and TAMMYE BEARD, files this Original Complaint against defendant CATAHOULA PARISH SCHOOL DISTRICT, and, in support, would respectfully show this Court the following:

### I. Jurisdiction and Venue

1. This action arises under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A). The Court has jurisdiction of this action under 20 U.S.C. § 1415(i)(3)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because defendant is an independent school district situated and operating within the Western District of Louisiana. Defendant may be served with process by serving its Legal Counsel, Wayne Stewart, Hammonds and Sills, 1111 S. Foster Dr., Bldg. C, Baton Rouge, Louisiana 70806 or its Superintendent, Gwile Freeman, at 200 Bushley St., Harrisonburg, Louisiana 71340.

## II.  Parties

3. Plaintiff B.B. is an eligible student with a disability under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*  He is an 8 year old male whose parents are Tammye and Carlos ("Kevin") B.  B.B. resides with his parents in Catahoula Parish, Louisiana, in the CATAHOULA PARISH SCHOOL DISTRICT.

4. Defendant is a recipient of federal funds and must comply with the IDEA.  Pursuant to IDEA, Defendant must also comply with Louisiana state laws and the rules promulgated by the Louisiana State Board of Education regarding the implementation of IDEA.

## III. Nature of the Action and Relief Sought

5. In this appeal of the decision of an Administrative Law Judge appointed to consider the Request for a Due Process Hearing, B.B. contends he was denied a Free Appropriate Public Education because of the following acts or omissions by Defendant set forth in the underlying request for due process:

   A. Defendant's failure to include appropriate positive behavioral interventions and strategies in B.B.'s Individualized Education Plan ("IEP");

   B. Defendant's failure to include an appropriate behavior plan in B.B.'s IEP;

   C. Defendant's failure to implement B.B.'s behavior plan;

   D. Defendant's failure to conduct an appropriate functional behavior assessment for B.B. to ensure that any plan developed from such evaluation is based on accurate and relevant information;

   E. Defendant's failure to include in B.B.'s IEP appropriate supplementary aids and services, program modifications, and supports for school personnel that will be provided to allow him to make progress in the least restrictive environment;

   F. Defendant's failure to transport B.B. to and from school in the least restrictive environment;

G. Defendant's failure to ensure that the IEP Team made the determination that special education transportation was needed as a related service prior to determining that B. B. needed special education transportation;

H. Defendant's failure to educate B.B. in the least restrictive environment;

I. Defendant's failure to allow B.B. to participate with grade-level peers in nonacademic areas with or without supports;

J. Defendant's failure to provide B.B. with an integrated and comparable classroom as his nondisabled peers in regular classes;

K. Defendant's failure to allow B.B.'s parents an opportunity to participate in the IEP Team decision-making process regarding educational decision-making;

L. Defendant's failure to allow B.B.'s parents to be equal participants in developing, reviewing and revising B.B.'s IEP;

M. Defendant's denial of B.B.'s parents' an opportunity to have meaningful participation in B.B.'s education;

N. Defendant's failure to properly document parent disagreements on IEP documents;

O. Defendant's failure to provide documents to be considered in an IEP Team meeting to B.B.'s parents in advance of the IEP Team meeting and after being specifically requested to provide any such documents;

P. Defendant's failure to document information from evaluation sources and/or failure to retain such information and/or failure to provide such information upon B. B.'s parents' request thereby denying B.B.'s parents an opportunity to participate in developing an appropriate Individual Education Plan for B.B.;

Q. Defendant's failure to ensure that B.B.'s IEP included an appropriate health plan and/or information regarding B.B.'s relevant medical conditions and related information in his IEP;

R. Defendant's failure to afford B.B.'s parents an opportunity to inspect and review all education records with respect to the provision of FAPE to B.B.;

S. Defendant's failure to comply with federal law regarding independent educational evaluations and the provision of District criteria to B.B.'s parents after they requested that he receive an independent educational evaluation;

T. Defendant's failure to provide social skills training to B.B.;

      U.      Defendant's failure to provide occupational services to B.B.;

      V.      Defendant's failure to provide special education aides or other District staff with appropriate training and support in order to implement B.B.'s IEP and BIP;

      W.      Defendant's failure to use appropriate safety measures in the transportation of students with disabilities including B.B.;

      X.      Defendant's failure to appropriately supervise B.B. during his transportation to and from school;

      Y.      Defendants' other failures to provide a free, appropriate public education for B.B. not specifically set forth herein and/or not yet discovered and/or to be discovered through the investigation process.

6.      As relief, the Plaintiff requested that the ALJ order Defendant to do the following[1]:

Allow B.B.'s parents an opportunity to review the observation notes and related documents used to develop the District's functional behavior assessment with Barbara Moseley, District's Behavior Interventionist;

Provide the District's special education bus aides with the health plan and behavior plan for B.B.;

Place B.B. on the regular education school bus effective immediately for the 2011-2012 school year, after which time the IEP Team will reevaluate B.B.'s transportation needs for the 2012-2013 school year, and with the understanding that while B.B. rides the regular education school bus, any problems or concerns regarding B.B.'s behavior or safety will result in the behavior specialist convening an IEP Team meeting with parents participating to address these issues and consider how best to address those issues on the regular education school bus;

Provide B.B. with a trained school bus aide on the regular education school bus for the specific purpose of allowing B.B. to be transported to and from school in the least restrictive environment;

Provide a trained behavior specialist on the regular education school bus for at least a three (3) week period of time for the limited purpose of training: (1) B.B. to ride to and from school in the least restrictive environment; (2) multiple students to serve as a "bus buddy"; and (3) a bus aide to implement and support the process;

---

[1] Some of the requested relief has been removed as moot due to the IEP team decision-making and has been removed from this Petition.

4

Provide training to B.B.'s parents on speech therapy skills, occupational therapy skills, and social skills through either a District service provider or an outside consultant;

Provide training by the behavior specialist in the "bus buddy" method prior to B.B. riding the bus and include the participation of the regular education school bus driver and the regular education school bus aide in safety and positive reinforcement techniques;

Provide training for the Transportation Director in all aspects of state and federal transportation laws pertaining to students with disabilities;

Provide training and end of the year follow-up training for the entire school district staff including all day-to-day substitutes and specifically District Administration including, but not limited to, the Superintendent/Transportation Director and the Special Education Supervisor regarding: implementation of student IEPs and behavior plans; parent rights regarding student education records; and least restrictive environment requirements for students with disabilities set forth in federal and state law to include discussion regarding the benefits of including students with disabilities in the mainstream/general education environment in both academic and nonacademic settings with district support;

Consultation with an outside qualified and mutually agreed upon evaluator for the 2011-2012 school year in order to oversee B.B.'s progress toward moving to a less restrictive and language rich environment including, but not limited to, funding for the evaluator to work with both professional and para-professional staff for a minimum of one (1) observation and one (1) subsequent staff and parent consultation at the end of each grading period;

Provide a full and individual educational evaluation ("FIE") of B.B. for the purpose of determining B.B.'s academic and nonacademic functioning levels to be conducted by an LSSP either employed by the District or contracted with the District in order to give the IEP Team a clear understanding of B.B.'s instructional levels and to be used as a baseline for IEP Team planning for the 2011-2012 school year;

A complete occupational therapy evaluation;

A complete social skills evaluation;

Compensatory speech services to be provided during the summer of 2011 to compensate B.B. for the speech therapy services not provided during the 2010-2011 and relevant 2009-2010 time period during which the speech therapist was unavailable during his therapy time;

> An independent (outside provider) transition planning assessment to be conducted within 24 months of B.B.'s becoming ineligible for special education services, due to his age or otherwise, for the purpose of considering and addressing transition training for specific community jobs to allow him to function in the least restrictive environment;
>
> One year of compensatory services for B.B. in the form of services related to his transition from school to community to begin on the date that he is no longer eligible for special education services;
>
> Reimbursement of all expenses incurred by the parents from October 2010 until the present time including, but not limited to, reasonable attorney's fees.

7. After an evidentiary hearing, the Administrative Law Judge ("ALJ") issued a written opinion on May 27, 2011. The ALJ held that Defendant did not fail to mainstream B.B. in regular education classes to the maximum extent appropriate. The ALJ also ordered Defendant to transport B.B. to school on the regular school bus, and allow him to be accompanied by a bus buddy, who may be N.B. or another appropriate individual if N.B. is unavailable. *See* Decision attached as "Exhibit A." The ALJ denied all other relief requested.

8. The ALJ's decision is erroneous as a matter of law. Additionally, his decision is not supported by the evidence presented in the hearing. Therefore, Plaintiffs are entitled to an Order from this Court reversing and vacating the ALJ's decision.

## IV. Factual Background

9. B.B. has Down's Syndrome and has always ridden the special education school bus. This dispute arose during the fall of the 2010-2011 school year when B.B. reached the second grade. B.B.'s parents requested through legal counsel that B.B.'s IEP Team[2] convene to discuss B.B.'s transportation because they wanted B.B. to be able to ride the regular education bus with his

---

[2] The Individuals with Disabilities Education Act requires states to provide disabled children with a "free appropriate public education" in return for acceptance of federal funds. The student's curriculum is uniquely tailored to the individual student through the annual implementation of an "individualized education program" or "IEP." The IEP is produced by a group of individuals that includes a qualified representative of the local education agency, the child's teacher, the child's parents or guardian, other individuals at the discretion of the agency or the parent, and where appropriate, the child. In Louisiana, this is called the IEP Team.

nondisabled peers. B.B.'s nondisabled nephew N.B. lives in the same home with B.B. and rides the regular education school bus. The boys attend the same school, Jonesville Elementary School.

10. In response to B.B.'s parents' request, Defendant convened an IEP Team meeting on October 21, 2010. However, in a telephone call days before the IEP Team meeting, Defendant's legal counsel Wayne Stewart notified B.B.'s parents' legal counsel Wesley Johnson that he would be attending B.B.'s IEP Team meeting at the request of the Superintendent Gwile Freeman.

11. Wesley Johnson objected in advance and in writing to the participation of Wayne Stewart as part of B.B.'s IEP Team. In that same written communication, Wesley Johnson requested that certain student records be provided to the parent prior to the IEP Team meeting.

12. Ultimately, legal counsel for both parties attended B.B.'s IEP team meeting and student records that were requested were not provided prior to the meeting. B.B.'s previous IEP had "N/A" next to the column entitled "Behavior Concerns." At the meeting, B.B.'s parents and their legal counsel were provided for the first time with a copy of a "Draft IEP" that detailed numerous behavior concerns regarding B.B.. The "Draft IEP" contained a long list of behavior concerns that Defendant had never before told B.B.'s parents were "concerns."

13. B.B.'s IEP Team spent the October 21, 2010, meeting discussing the behaviors listed on the "Draft IEP" and why, because of those behaviors, B.B. could not ride the regular education school bus.

14. As a result of the information presented at the October 21, 2010, IEP Team meeting, B.B.'s parents requested that Defendant conduct a functional behavior assessment ("FBA") regarding the behaviors at issue.

15.     B.B.'s parents expressed their disagreement with the IEP Team's decision not to report any behavior concerns until after they had requested that B.B. be allowed an opportunity to ride the regular education bus.  B.B.'s October 21, 2010, IEP noted that his parents would be presenting an Addendum explaining their disagreement more fully.  B.B.'s parents provided a written Addendum on or around December 10, 2010.  Defendant has refused to place the Addendum in B.B.'s IEP.

16.     B.B. has an allergy to ants causing the need for an Epi-pen to be readily available at school.  During B.B.'s October 21, 2010, IEP Team meeting, the school nurse presented B.B.'s parents with a copy of a health plan that contained references to a student named "Jaida."   The plan discussed a life-threatening allergy to seafood and wasps and stated that B.B.'s Epi-pen was located on his person.  B.B. has never had a life-threatening allergy to seafood and wasps.  B.B.'s Epi-pen is not located on his person, but in the school office.  B.B.'s parents pointed out these discrepancies at the October 21, 2010, IEP meeting.  However, Defendant refused to correct B.B.'s health plan until B.B.'s parents provided a letter from B.B.'s doctor.  From August 2010 until January 2011, B.B.'s health plan incorrectly stated the whereabouts of his EpiPen, listed incorrect information regarding his allergies, and even mentioned another student. In December 2010, B.B.'s parents were able to provide a doctor's note.   B.B.'s health plan was finally revised in January 2011.  Defendant's failure to provide a copy of B.B.'s proposed health plan, or even access to a copy of B.B.'s proposed health plan, in advance of the October 21, 2010, as requested, prevented B.B.'s parents from fully participating in B.B.'s education and placed B.B. in an unsafe situation.

17.     An FBA was conducted and another IEP team meeting was subsequently held on December 7, 2010.  Legal counsel did not attend the meeting.  The IEP Team determined that a

behavior improvement plan ("BIP") for the school bus was necessary, and one was developed. After this IEP meeting, B.B.'s parents noticed that the FBA contained an observation date on a day in which B.B. was not actually at school, but was out of town at a doctor's appointment. B.B.'s parents requested an opportunity to review the notes of Barbara Mosley, the behavior interventionist for the Catahoula Parish School Board who conducted the FBA.  Defendant originally denied this request.  B.B.'s parents subsequently requested the opportunity to have Barbara Mosley provide them with an explanation regarding her observation notes of B.B.. Defendant has denied this request, now offering only copies of the notes which cannot be understood by his parents without the benefit of an explanation and which should be explained to them pursuant to IDEA.

18.     B.B.'s parents next requested in writing that an independent educational evaluation ("IEE") be conducted for B.B. with regard to the FBA.  Defendant responded to that request by having their legal counsel write two letters that were confusing and failed to provide information necessary for B.B.'s parents to understand where to go for an IEE that would be fully funded by Defendant as required by IDEA.

19.     Between December 10, 2010, and January 31, 2011, Defendant modified B.B.'s BIP numerous times without convening an IEP Team meeting. Defendant also failed to properly train staff regarding B.B.'s BIP and failed to follow B.B.'s BIP.

20.     During January 2011, Defendant delivered B.B. home on the special education school bus completely naked, and almost completely naked, on more than one occasion.

21.     Defendant allowed an untrained substitute teacher to teach B.B.  The teacher slapped B.B. in January of 2011, and Defendant terminated her employment.

22. B.B.'s parents, through legal counsel, then filed the underlying due process hearing on January 31, 2010. It was revised and refiled on February 2, 2011.

23. The underlying due process hearing was one of the first due process hearings, if not the first, in the state of Louisiana to be held since the amendment of R.S. 49:992 by enacting R.S. 49:992(D)(2)(b)(vii) through ACT 683 of the 2010 Regular Session of the Louisiana Legislature. ACT 683 moved special education due process hearings in the state of Louisiana from independent hearing officers assigned by the Louisiana Department of Education to Administrative Law Judges with the Louisiana Department of Administrative Law. ACT 683 specifically states that the Administrative Procedure Act does not apply to special education due process hearings.

24. As evidenced by the record, the Administrative Law Judge ("ALJ") was not aware of what his authority was regarding many procedural issues, including whether he had any authority to compel either party to produce documents or witnesses either prior to or during the hearing. Defendant refused to produce student records upon request. In a final attempt to access the student records, B.B. requested and received subpoenas from the state's Administrative Law Division. The ALJ quashed the subpoenas on March 25, 2011. On March 25, 2011, the ALJ also denied B.B.'s Motion for a Continuance to allow additional time to access documents including B.B.'s education records, holding that good cause for continuance did not exist.

25. The ALJ also was uncertain or unfamiliar with other aspects of a special education due process hearing such as the Resolution Session and the mandatory nature of the provision of documents. After the Resolution Session between the parties, B.B. filed a Status Report and Motion for Requested Relief on February 18, 2011, that set forth Defendant's failures to properly participate in the Resolution Session resulting in no resolution of the controversy. In the Motion

for Requested Relief, B.B. requested that the ALJ issue an order stating that any subsequent Offer of Settlement have the full effect of an offer made during the Resolution Session as enforceable in a District Court. On March 25, 2011, the ALJ responded to the Motion for Requested Relief by terming it a "Motion to Enforce a Settlement Offer." The ALJ failed to grant or deny the Motion for Requested Relief or to even acknowledge the legal argument that was actually made on February 18, 2011.

## V. Claim for Relief — IDEA

26. The Due Process Hearing began on March 28, 2011, and concluded on March 31, 2011. At the conclusion of the hearing, and after reviewing the transcript and the briefs of counsel, the ALJ began his opinion by incorrectly stating the allegations by summarizing them as a denial of a free, appropriate public education primarily because: (1) B.B. was not "mainstreamed" to the maximum extent appropriate in regular education classes, and (2) B.B. was assigned to ride the special education bus, which the parents felt was not the least restrictive appropriate transportation. B.B. agrees that the ALJ correctly stated a primary allegation in the case as a failure to provide B.B.'s transportation in the least restrictive environment. However, the ALJ was incorrect in summarizing the remainder of the allegations as an allegation that B.B. should be "mainstreamed" in the regular education classroom. In doing this, the ALJ erroneously applied the law to the facts and failed to analyze the facts as they related to the allegations that were actually made in the request for due process. *Teague ISD v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). The ALJ's conclusions of law were also not based on a preponderance of the evidence presented in the due process hearing. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000) citing to *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997).

27. The ALJ erroneously held that even though Defendant failed to ensure that a regular education teacher attended B.B.'s IEP Team meetings as required by 34 C.F.R. § 300.321(2), it did not result in a denial of a free, appropriate public education because: (1) it was not a *per se* violation, and (2) because B.B. failed to prove that the presence of a regular education teacher would have changed the IEP Team's decisions. This conclusion misapplies the law to the facts by failing to fully analyze the procedural violation using the standard set forth in the Fifth Circuit. This conclusion also erroneously bases a decision on one recent decision by the Second Circuit Court of Appeals as a legal standard on the issue of burden of proof in the Fifth Circuit. IDEA does not require a Plaintiff to prove that the presence of a regular education teacher would have changed an IEP Team's decision-making in order for it to be a denial of FAPE. Rather, the correct analysis is whether the procedural deficiency resulted in a loss of educational opportunity for B.B. or infringed his parents' opportunity to participate in the IEP process. *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804 (5th Cir. 2003)

28. The ALJ also erroneously held that the Defendant did not fail to have other required individuals attend IEP Team meetings. In making this finding, the ALJ ignored relevant testimony from the individuals themselves as well as from the accepted expert in the field of special education.

29. The ALJ also erroneously concluded that federal regulation 34 C.F.R. § 321(c)(a)(6) authorizes a school district to invite an attorney and a paralegal to attend a student's IEP team meeting for the express purpose of offering legal advice to the school district during a child's IEP Team meeting rather than for the purpose of attending as active participants with knowledge of the student.

30. The ALJ misapplied the law to facts in determining that Defendant's presentation of the "Draft IEP" at the October 21, 2010, IEP Team meeting did not deny B.B.'s parents a meaningful opportunity to participate in B.B.'s IEP decision-making.

31. The ALJ erroneously determined that Defendant conducted an appropriate FBA by failing to consider all of the relevant evidence presented including testimony from Defendant's own witnesses as well as from the accepted expert in the field of special education.

32. The ALJ misapplied the law to facts with respect to the Defendant's repeated modification of the BIP outside of a properly convened IEP meeting as well as Defendant's failure to properly train its staff regarding how to implement the BIP.

33. The ALJ's conclusions also failed to recognize the significance of many of the Findings of Fact that he made regarding BIPs and their development and implementation as well as the significance of the mysterious, and yet to be explained, beginning and ending of B.B.'s bizarre bus behaviors.

34. The ALJ failed to make relevant findings of fact regarding the necessity of B.B. to be provided certain Related Services and failed to correctly apply to law to Findings of Fact that were made with regard to the issue of whether Defendant provided appropriate related services to B.B.

35. The ALJ's finding regarding expert witness Dr. Sherlyn Powell's testimony as to B.B.'s current educational progress ignores the significant amount of testimony and evidence presented, including testimony by Dr. Powell, regarding B.B.'s lack of progress during the time period leading up to the date of the hearing. This finding also misapplies relevant law to the facts resulting in an absurd legal conclusion that would make a student's lack of progress irrelevant as long as some progress can be demonstrated before the hearing actually takes place.

36. The ALJ's determination that the Defendant delivered educational services to B.B. in the least restrictive environment is error based on the Findings of Fact that were made as well as the significant portion of testimony and evidence provided, but not acknowledged, in the decision. Additionally, the manner in which the ALJ applied the Fifth Circuit's *Daniel R.R.* v. *State Board of Education*, 874 F.2d 1036 (5th Cir. 1989) to the facts in this case was erroneous. B.B.'s parents have never alleged that B.B. should be "mainstreamed" into a regular education academic classroom. In fact, although their testimony on this point was clear, the ALJ ignored it. The ALJ failed to analyze whether Defendant took steps to ensure that B.B. was allowed nonacademic opportunities, such as recess and lunch, to interact with his nondisabled peers. The ALJ failed to analyze what steps Defendant has taken to ensure that B.B. has had an opportunity to ride the regular education bus with his nondisabled peers, either with or without support. The ALJ also ignored the importance of Defendant's failure to have a regular education teacher present during B.B.'s IEP Team meetings to this issue.

37. The ALJ's analysis is erroneous because it fails to acknowledge the importance of Defendant's failure ro include a regular education teacher in B.B.'s IEP Team meetings during the IEP Team Meeting held in the Spring of 2010, when the IEP Team determined that B.B. should no longer receive any academic instruction in the regular classroom. The ALJ also failed to acknowledge that the evidence presented demonstrates that Defendant also failed to allow B.B. the opportunity to participate in academic or non-academic activities with non-disabled peers prior to or after the Spring 2010 IEP Team meeting.

38. The ALJ erroneously reviewed only the facts of B.B.'s situation that fit within the facts presented in *Daniel R.R.* despite the fact that B.B.'s request for due process does not raise the question of whether B.B. should be mainstreamed in the academic setting. The ALJ erroneously

14

concluded that Plaintiff did not prove that placing B.B. in a regular classroom the entire day would be more appropriately tailored to meet his needs because Plaintiff was not trying to prove this, and it was not an issue in this case. It was the issue in *Daniel R.R.*

39. The ALJ also erroneously spent considerable time analyzing an IEP that was developed in February of 2011, *after the filing of the request for due process*, while seemingly ignoring all IEPs in place during the relevant time periods prior to the filing of the request for due process and despite the fact that considerable testimony was offered regarding these relevant IEPs. The ALJ's finding that the February 21, 2011, IEP Team determined that the special education classroom is an appropriate setting for B.B. is erroneous as support for his conclusion that the Defendant accommodated B.B. in regular educational settings. In fact, the decision of the February 2011 IEP Team to allow B.B. to participate in nonacademic activities with nondisabled peers supports the fact that Defendant had previously denied B.B. such opportunities.

40. The ALJ erroneously concluded that whether services were provided in a coordinated or collaborative manner by key stakeholders was moot because B.B. failed to introduce testimony by any of his *current* educational service providers regarding efforts to implement B.B.'s program of special education and related services. The ALJ cited no legal authority supporting this conclusion, nor can it be reconciled with the central issue at bar—Defendant's *past* failures to provide B.B.'s education in a coordinated or collaborative manner by key stakeholders.

41. The ALJ erroneously lists B.B.'s report card as evidence of his educational progress, yet ignores testimony that B.B.'s report cards were admittedly incorrect and reflect classes in which B.B. was never enrolled, grades he never received, and teachers he has never met.

42. The ALJ erroneously concluded that any educational setbacks experienced by B.B. were due to his chronic absences from school. The ALJ failed to note any authority regarding what is

15

a "chronic absence" under Louisiana law; how such authority might affect Defendant's obligation to provide FAPE to B.B.; or how such a determination might affect a legal conclusion regarding a student's failure to make meaningful progress. The ALJ also failed to take note of the fact that, if in fact chronic absences were a concern, Defendant repeatedly failed to address them as a reason for B.B. failing to make meaningful progress.

43. The ALJ erroneously determined that there are no guidelines for discovery in special education due process hearings in the state of Louisiana, and refused to acknowledge the existing guidelines and other publications that B.B. produced in response to the ALJ's request for authority to compel parties to produce documents. The ALJ also erroneously denied Plaintiff's request for a continuance in order to allow additional time to acquire student records.

44. The ALJ failed to make many relevant findings of fact and conclusions of law pertaining to B.B.'s safety at school and on the school bus.

## **VI. Prayer**

45. Plaintiff prays that the Court receive the records of the administrative proceedings as required by the IDEA and award B.B. the following:

(1) A judgment reversing and vacating the ALJ's decision and find that Defendant failed to provide B.B. with a free appropriate education as required by IDEA;

(2) A judgment reversing and vacating the portions of the ALJ's decision that denied B.B. the relief requested, including relief that provides support and compensatory services regarding the transportation of B.B. on the regular education school bus;

(3) Enter a judgment declaring that B.B. is the prevailing party entitled to an award of attorney's fees;

(4) All attorney's fees and costs in this behalf expended;

(5) Such other and further relief, at law or in equity, to which B.B. may show himself to be justly entitled.

Respectfully submitted,

**ESCAMILLA, PONECK & CRUZ, LLP**


**By:_____/S/_____**
    **WESLEY EBY JOHNSON**
    Fed. I.D. No. 32518
    State Bar No. 32518
    P.O. Box 7560
    Monroe, LA 71201
    (318) 807-0924 (Telephone)
    (318) 807-0925 (Facsimile)

    ATTORNEYS FOR PLAINTIFFS